**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0101-18T1

CHRISTOPHER HOUGHTON,

    Plaintiff-Respondent,

v.

STEVE HOURAN, HOURAN
FUCETOLA CONSTRUCTION,
LLC, and HOURAN USA
CONSTRUCTION, LLC,

    Defendants/Third-Party
    Plaintiffs-Appellants,

v.

SHEILA HOUGHTON,

    Third-Party Defendant-
    Respondent,

 and

S&L ARCHITECTURE
STUDIO, LLC,

    Third-Party Defendant.

_____

Submitted June 25, 2019 – Decided August 28, 2019

Before Judges Rothstadt and Suter.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-1982-15.

Hegge & Confusione, LLC, attorneys for appellants (Michael J. Confusione, of counsel and on the brief).

Hedinger & Lawless, LLC, attorneys for respondent (Jeffrey S. Wilson, on the brief).

PER CURIAM

Following remand, defendants Steve Houran (Houran), Houran Fucetola Construction, LLC (Houran Fucetola), and Houran USA Construction, LLC (Houran USA) (collectively defendants) appeal from the August 31, 2018 order that found Houran personally liable for $41,493.06 in compensatory damages and $26,700 in attorney's fees. We reverse the compensatory damages award against Houran and vacate the attorney fee award, remanding only that issue to the trial court to determine a reasonable attorney fee for the regulatory violation.

I

In the underlying case, plaintiff sued defendants for breach of contract, misrepresentation and violation of the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -210, arising from a home improvement contract. Our unreported opinion summarized testimony from the 2016 bench trial:

Kenneth Schier of S&L Architecture Studio was hired to prepare architectural plans for an addition to plaintiff's home in Ridgewood, New Jersey. Plaintiff searched for a contractor through Home Advisors. Defendant Steve Houran received the referral, contacted plaintiff and met with him. Plaintiff gave Houran a copy of the architectural plans. Houran prepared the written contract based on these plans. It was signed on September 16, 2013, by plaintiff and Houran Fucetola.

The contract did not include the business address of Houran Fucetola, the start and completion date for the project or the total price to be paid by plaintiff. It did include sub-categories of work to be completed and the price for the foundation, framing, roofing, siding, flooring, electrical, and plumbing. The contract included a schedule of payments that were due upon certain benchmarks.

Work commenced on the addition in March 2014, after building permits were obtained. The construction project immediately struck a sour note, with the defendants undertaking demolition work while the Houghtons were away, contrary to their instruction. The work proceeded until April 23, 2014, when Houran sent a termination notice, claiming that delays were attributable to the owner's interference with the scope of the work and "trigger[ed]" by "the decision to remove portions of the contract." By that point, plaintiff had paid $51,861.74, which was 80% of the contract. The construction was not finished. Plaintiff hired contractors to remediate and complete the work.

Schier testified as an expert in residential construction that there were multiple problems with the construction which was "[b]elow acceptable reasonable standards," describing it as "the worst construction project [he] had ever seen in [his] career." He testified that the

3

foundation was improperly constructed, the ridge beam was not made of microllam as required by the plans, the construction used improper fasteners, lacked headers, used improper joist hangers, did not have hurricane straps, was missing floor joists, and the second floor stairs now were sagging. There were other workmanship problems as well.

The Village of Ridgefield building inspector, Carlo Madrachimov, testified, "there [were] multiple failures on this . . . project," which included the depth of the footing, framing deficiencies, and use of a ridge beam made of "regular nominal lumber." He said that the architect's plans were not followed.

Houran testified that he had many years' experience in the construction industry and completed hundreds of home improvement renovations. He said they ran into some issues in the construction that required four change orders, all of which were agreed to by plaintiff through email. His firm was not able to complete the project because plaintiff "excised" parts of the contract. He blamed Sheila Houghton for interfering with their work. Houran was not permitted to testify about issues he had with the architectural plans because defendants had not named any expert witnesses in their answers to discovery. David Sanchez, who was employed by Houran USA on the project, testified that Sheila would not let the project go forward as she "was always there having little comment or asking something or saying something to do their own way."

[Houghton v. Houran, No. A-2056-16 (App. Div. June 21, 2018) (slip op. at 3-6).]

The trial court found that defendants breached the contract with plaintiff by sending a termination notice to plaintiff. Id. at 6. It "found plaintiff suffered

actual damages of $41,493.06, consisting of the cost to remediate and to complete the work, less the balance remaining on the contract." Ibid.

It also found a violation of the "Home Improvement Practices" regulations, N.J.A.C. 13:45A-16.2(a)(12), "because [the contract] did not include defendants' business address, the dates or time period the work would begin or be completed by, or the total price to be paid by the buyer." Ibid. Because plaintiff's "damages arose from 'shoddy work and breach of contract' and were not causally related to the CFA violations[,]" the trial court denied plaintiff's request for treble damages. Ibid. The trial court's judgment stated "sufficient evidence had been presented that the defendant Steven Houran was individually liable under the 'Home Improvement Practices' regulations of the CFA[.]" Id. at 7. The trial court "entered a judgment against all defendants, including Houran individually, in the amount of $68,193.06, consisting of $41,493.06 in compensatory damages and $26,700 in attorney's fees and costs." Ibid. Defendants appealed the judgment.

In our June 2018 opinion, we affirmed the trial court's finding that the contract with Houghton was breached and that defendants were liable for damages in the amount of $41,493.06. Id. at 8. However, we vacated the judgment against Houran individually for breach of contract. Id. at 12-13. He was not a signatory to the contract with Houghton. Id. at 12. He could not be

liable to plaintiff merely as the managing member of an LLC.  Ibid.  And, although the corporate form could be pierced upon proof of fraud or injustice, the court had not made any findings about that issue when it imposed individual liability on Houran.  Ibid.  We remanded the issue to the trial court "for appropriate findings of fact and conclusions of law."  Id. at 12-13.

We affirmed the trial court's finding that the contract violated the CFA home improvement regulations.  Id. at 2.  However, because it had not made findings about Houran's individual liability for that violation, we vacated that aspect of the judgment and remanded the issue to the trial court.  Id. at 11.

We also vacated the attorney's fee award because the trial court had not made findings of fact about the "fees charged, the hours spent on the case, whether the hours related to the breach of contract or CFA claim or any of the other factors under RPC 1.5."  Id. at 15-16.  It was not clear whether the trial court determined a lodestar or whether it enhanced it.  Id. at 15.  In remanding the attorney fee issue to the trial court, we instructed that the trial "court [was] to determine the amount of attorney's fees that [were] reasonable and then whether the fees should be assessed against Houran individually."  Id. at 16.

The trial court's August 31, 2018 order—that followed our remand—found Houran "personally liable for the judgment entered in this case in the amount of $41,493.06, plus attorney's fees and costs."  It awarded attorney's fees

of $26,700 that the court found "to be reasonable and proper based on the complexity of this case and the amount of time reasonably expected for a case of this nature." The trial court cited Houran's testimony at trial that "he was directly responsible for the preparation and signing of the contract, and all steps leading up thereto." It found the actions that gave rise to the CFA violations "consisted of the drafting and implementation of the contract, as well as the formation of the business relationship between the parties, all of which were individually organized and carried out by Houran."

The trial court found plaintiff's attorney spent "87.75 hours" on the case through trial, that his billing rate of $300 per hour was "consistent with those [fees] customarily charged in Bergen County for similar services by attorneys of similar qualifications." The case involved "novel issues," involved the CFA, and the fees were not "duplicative of paraprofessional services." It concluded the fees of $26,700 were "reasonable and appropriate based on the complexity of the case, skill of the attorney, and standard billing rates for similarly situated attorneys." Because the trial court found Houran personally liable under the CFA, it assessed all the attorney's fees against him individually.

On appeal, defendants argue the trial court did not follow our remand directive. They contend the trial court improperly imposed personal liability on

Houran for the compensatory damages and that the trial court did not determine attorney's fees that were reasonable for the CFA regulatory violation.

II

Our review is limited to determining whether the trial court abused its discretion. Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011) (citing Bender v. Adelson, 187 N.J. 411, 428 (2006)). "An abuse of discretion 'arises when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Castello v. Wohler, 446 N.J. Super. 1, 24 (App. Div. 2016) (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)).

The trial court did not abuse its discretion in finding Houran was individually liable for the CFA regulatory violation. The court found the contract with plaintiff did not include the business address for Houran Fucetola, the dates or time period the work would begin or would be completed, or the total price to be paid by plaintiff. These were violations of the CFA home improvement regulation. N.J.A.C. 13:45A-16.2(a)(12). There was substantial evidence that Houran was responsible for drafting and implementing the contract, and forming the business relationship with plaintiff. The court's decision that Houran was responsible for this regulatory violation was supported by the evidence.

  A-0101-18T1

The regulatory violation by Houran, however, was not the basis for assessing $41,493.06 in damages against him individually. In the trial court's opinion from November 2016, it found that plaintiff's damages arose from "[d]efendants' shoddy work and breach of contract, and not from any of the CFA violations that were established." Therefore, the court's damage assessment had to be based on the contract because it was not based on the CFA regulatory violation.

The trial court also did not make any findings that Houran was individually responsible for breach of contract damages arising from the LLC's. He was not a signatory to the contract. The trial court did not find that Houran committed fraud or injustice. See Touch of Class Leasing v. Mercedes-Benz Credit of Can., Inc., 248 N.J. Super. 426, 441 (App. Div. 1991) (providing that "proof of fraud or injustice" must be shown to "pierce the corporate veil to impose liability on the corporate principals"). Therefore, the trial court's remand decision did not provide any basis to support the finding that Houran was individually liable for the $41,493.06 in compensatory damages: the CFA regulatory violation was not the source of plaintiff's damages and Houran was not found to be personally responsible for the LLC's breach of contract. We are constrained to reverse paragraph one of the trial court's remand order that

entered judgment against Houran individually for compensatory damages because it rested on an impermissible basis.

We review a trial court's determination regarding attorney's fees for abuse of discretion and such determinations are generally not disturbed absent a clear error in judgment. Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005). On remand, the trial court made findings about the attorney's fees charged, hours spent on the case and other factors required by RPC 1.5. There was no enhancement made to the lodestar. The trial court assessed attorney's fees against Houran individually because it found he was individually liable for the CFA regulatory violation. Since Houran was not individually liable for the breach of contract damages and, according to the trial court's 2016 decision, those damages did not arise from the CFA regulatory violation, the trial court should have determined what fees were reasonable for the regulatory violation and not simply attributed all of the 87.75 hours in fees to the regulatory violation. We vacate the attorney fee award and remand that single issue to the trial court to determine a reasonable fee for the regulatory violation.

Reversed in part, vacated in part and remanded for further proceedings consistent with our opinion.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0101-18T1